E-FILED
Wednesday, 19 October, 2022  07:32:07 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

## URBANA DIVISION

| | |
|---|---|
| Tiffany Craw, individually and on behalf of all others similarly situated, | 2:22-cv-02225 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| The Clorox Company, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.    The Clorox Company ("Defendant") manufactures, markets, and sells laundry sanitizer marketed as able to "[k]ill[] 99.9% of bacteria on laundry" under the Clorox brand (the "Product").



2.      Although textiles and fabrics can be a source of substantial numbers of pathogenic microorganisms, the Centers for Disease Control and Prevention ("CDC") concluded that diseases and infections linked to contaminated fabrics are so few that any risk of transmission as a result of the laundering process likely is negligible.[1]

3.      This was evaluated in the context of the 5 billion pounds annually laundered in health-care settings in the United States, where the entire population is sick, infected or at-risk.

4.      Carol McLay, an Infection Prevention Consultant with Association for Professionals in Infection Control and Epidemiology, Inc. ("APIC"), concurred with the CDC's findings.

5.      McLay stated that transmission of infectious diseases from laundered textiles are so rare that during the past 43 years, only 12 have been reported worldwide.

6.      Moreover, there have been no published reports of patient-to-patient transmission of infection associated with laundered textiles.

7.      McLay analyzed studies and reports in the media and literature, concluding that infections thought to have originated from laundering processes were actually from direct contact or aerosols from non-washed linens due to improper handling, such as shaking out soiled linens.

8.      Other presumed occupational infections associated with laundered textiles were found to be community acquired.

9.      The reasonable conclusion is that laundering in the domestic context poses a risk of bacteria transmission and harm that is less than negligible.

10.     This is because the antimicrobial effect of laundering follows the principles introduced by Sinner, who identified the four key variables as temperature, mechanical action, chemistry and time.

---

[1] CDC, "Guidelines for environmental infection control in health-care facilities: recommendations of CDC and Healthcare Infection Control Practices Advisory Committee (HICPAC)," (2003) (Updated: July 2019).

11.    The majority of Americans wash clothes in hot water, with temperatures of 60 degrees Celsius or 140 degrees Fahrenheit.

12.    At hot and warm temperatures, washing inactivates microorganisms, accelerates activation of detergents and facilitates mechanical removal of soil and other particulates.

13.    Even cold water washing with detergent, followed by a normal drying cycle, reduces the risk of bacteria survival and harm to a negligible level.

14.    The drying stage, such as use of a tumble drier or exposure to sunlight when clothes are dried outdoors, further reduces the potential for bacteria to survive and cause harm.

15.    No credible and accepted studies of domestic laundry practices has shown that hot, warm, and even cold water, detergent, and a drying cycle, are insufficient to prevent the spread of bacteria and cause any harm.

16.    While the Product may be authorized to claim it can achieve a reduction in 99.9% of bacteria, such a claim is misleading in light of the absence of any evidence that survival of bacteria from a standard laundering process poses any risk.

17.    Consumers will wrongly expect the Product can provide a meaningful benefit beyond the standard laundering process.

18.    The Product is sold for a price premium compared to other similar products, no less than $6.48 for 42 oz, a higher price than it would be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

19.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

20.    The aggregate amount in controversy exceeds $5 million, including any statutory and

3

punitive damages, exclusive of interest and costs.

21.     Plaintiff is a citizen of Illinois.

22.     Defendant is a Delaware corporation with a principal place of business in Oakland,
Alameda County, California.

23.     The class of persons Plaintiff seeks to represent includes persons who are citizens of
different states from which Defendant is a citizen.

24.     The members of the class Plaintiff seeks to represent are more than 100, because the
Product has been sold with the representations described here for several years, from grocery
stores, warehouse club stores, convenience stores, big box stores, and online in the States covered
by Plaintiff's proposed classes.

25.     Venue is in this District with assignment to the Urbana Division because a substantial
part of the events or omissions giving rise to these claims occurred in Macon County, including
Plaintiff's purchase and use of the Product, exposure to and reliance on the representations, and
her awareness that they were misleading and incomplete.

Parties

26.     Plaintiff Tiffany Craw is a citizen of Decatur, Illinois, Macon County.

27.     Defendant The Clorox Company is a Delaware corporation with a principal place of
business in Oakland, California, Alameda County.

28.     Defendant is a leading seller of home cleaning products.

29.     The Clorox brand is known for its ability to reduce bacteria and keep environments
safe and hygienic.

30.     Plaintiff bought the Product on one or more occasions within the statute of limitations
for each cause of action alleged, at stores including Walmart, 4625 E Maryland St, Decatur,

Illinois, 62521, between August and October 2022, among other times.

31.    Plaintiff relied on the front label representations the Product would "sanitize" her laundry and that it would kill 99.9% of bacteria.

32.    Plaintiff bought the Product because she was not aware her laundry was sufficiently sanitized through the standard laundering process, and expected the claim to kill 99.9% of bacteria meant it provided a meaningful benefit in reduction of bacteria beyond this.

33.    Plaintiff was unaware that no credible studies on domestic laundry practices show any potential risk of bacteria survival and transmission from hot, warm or cold water, detergent, and a drying cycle.

34.    Plaintiff bought the Product at or exceeding the above-referenced price.

35.    Plaintiff paid more for the Product than she otherwise would have paid had she known the truth, as she would have paid less or not bought it.

36.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

37.    Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes or provide incomplete information.

38.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.

39.    Plaintiff is unable to rely on the labeling of not only this Product, but other similar products promoting their antibacterial abilities, because she is unsure of whether their representations are truthful and complete.

## Class Allegations

40.  Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of South Dakota, West Virginia, North Carolina, Kentucky, Utah, Nebraska, Kansas, and Wyoming who purchased the Product during the statutes of limitations for each cause of action alleged.

41.  Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

42.  Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

43.  Plaintiff is an adequate representative because her interests do not conflict with other members.

44.  No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

45.  Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

46.  Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

47.  Plaintiff seeks class-wide injunctive relief because the practices continue.

### Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*

48.  Plaintiff incorporates by reference all preceding paragraphs.

49.   Plaintiff sought to purchase a product that would provide a meaningful benefit beyond the standard laundering process in terms of sanitizing laundry and reducing bacteria.

50.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

51.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

52.   Defendant intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

Breaches of Express Warranty,<br>
Implied Warranty of Merchantability/Fitness for a Particular Purpose and<br>
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq</em>.

53.   The Product was manufactured, labeled, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it provided a meaningful benefit beyond the standard laundering process in terms of sanitizing laundry and reducing bacteria.

54.   Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

55.   Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

56.   Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it provided a meaningful benefit beyond the standard laundering process in terms of sanitizing laundry and reducing bacteria.

7

57.     Defendant's representations affirmed and promised that the Product provided a meaningful benefit beyond the standard laundering process in terms of sanitizing laundry and reducing bacteria.

58.     Defendant described the Product so Plaintiff and consumers believed it provided a meaningful benefit beyond the standard laundering process in terms of sanitizing laundry and reducing bacteria, which became part of the basis of the bargain that it would conform to its affirmations and promises.

59.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

60.     This duty is based on Defendant's outsized role in the market for this type of product, the globally trusted Clorox brand, known for the highest-quality cleaning products.

61.     Plaintiff recently became aware of Defendant's breach of the Product's warranties.

62.     Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

63.     Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

64.     The Product did not conform to it affirmations of fact and promises due to Defendant's actions.

65.     The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it provided a meaningful benefit beyond the standard laundering process in terms

of sanitizing laundry and reducing bacteria.

66.    The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it provided a meaningful benefit beyond the standard laundering process in terms of sanitizing laundry and reducing bacteria, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

67.    Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

68.    Defendant had a duty to truthfully represent the Product, which it breached.

69.    This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, the globally trusted Clorox brand, known for the highest-quality cleaning products.

70.    The representations and omissions went beyond the specific representations on the packaging, and incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that Defendant has been known for.

71.    These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

72.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

73.    Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

## Fraud

74.   Defendant misrepresented and/or omitted the attributes and qualities of the Product relative to the efficacy of the standard laundering process, which conveyed to Plaintiff it provided a meaningful benefit beyond the standard laundering process in terms of sanitizing laundry and reducing bacteria.

## Unjust Enrichment

75.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations;

3. Awarding monetary, statutory and/or punitive damages, and interest;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   October 19, 2022

                                        Respectfully submitted,

                                         /s/ Spencer Sheehan
                                        _____

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com