**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| **TIFFANY CRAW, individually and on behalf of all others similarly situated,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 22-CV-2225** |
| **THE CLOROX COMPANY,** | ) | |
| **Defendant.** | ) | |

**ORDER**

Plaintiff, Tiffany Craw, filed a Complaint (#1) against Defendant, The Clorox Company, on October 19, 2022. Therein, Plaintiff raises a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 et seq., and myriad related claims based on the allegedly misleading labeling of Defendant's laundry sanitizer product.

Presently before the court is Defendant's Motion to Dismiss (#7), filed on February 17, 2023. Plaintiff filed a Response (#11) on March 3, 2023, and Defendant filed a Reply (#13) on March 13, 2023. For the reasons set forth below, Defendant's Motion to Dismiss (#7) is GRANTED.

## BACKGROUND

The following background facts are taken from the allegations in the Complaint. At this stage of the proceedings, the court accepts as true all material allegations in the Complaint, drawing all reasonable inferences therefrom in Plaintiff's favor. See *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016).

Defendant manufactures, markets, and sells laundry sanitizer ("the product") under the Clorox brand.[1] The label on the product states: "Kills 99.9% of bacteria on laundry."

Per the Complaint, while textiles and fabrics can be a source of substantial numbers of pathogenic microorganisms, the Centers for Disease Control and Prevention ("CDC") has concluded that diseases and infections linked to contaminated fabrics are so few that any risk of transmission as a result of the laundering process likely is negligible. Carol McLay, an Infection Prevention Consultant with the Association for Professionals in Infection Control and Epidemiology, Inc., concurred with the CDC's findings. McLay stated that transmission of infectious diseases from laundered textiles are so rare that during the past 43 years, only 12 have been reported worldwide. Plaintiff thus alleges that "[t]he reasonable conclusion is that laundering in the domestic context poses a risk of bacteria transmission and harm that is less than negligible."

[1] Plaintiff does not describe in her Complaint how the product is intended to be used. In its Motion to Dismiss, Defendant states that the product "is not a replacement for detergent; instead, it is intended for use with detergent during a laundry cycle to kill bacteria and remove odors." Plaintiff does not dispute that characterization.

Plaintiff further alleges that the majority of Americans wash clothes in hot water, and that washing in hot water inactivates microorganisms, accelerates the activation of detergents, and facilitates the mechanical removal of soil and other particulates. Even cold water, Plaintiff alleges, when "followed by a normal drying cycle, reduces the risk of bacteria survival and harm to a negligible level." The use of a tumble drier or exposure to sunlight further reduces the potential for bacteria to survive. No credible and accepted studies of domestic laundry practices have shown that hot, warm, and even cold water, detergent, and a drying cycle, are insufficient to prevent the spread of bacteria and cause any harm.

Plaintiff asserts that Defendant's claim that the product kills 99.9% of bacteria on laundry is "misleading in light of the absence of any evidence that survival of bacteria from a standard laundering process poses any risk." She maintains that consumers will wrongly expect that the product can "provide a meaningful benefit beyond the standard laundering process."

Plaintiff alleges that she bought the product on more than one occasion while relying on the representations that it would "sanitize" her laundry and kill 99.9% of the bacteria on it. She was not aware that her laundry was "sufficiently sanitized through the standard laundering process." She "expected the claim to kill 99.9% of bacteria meant it provided a meaningful benefit in reduction of bacteria beyond this." Plaintiff paid more for the product than she otherwise would have had she known the truth.

Plaintiff's Complaint is a putative class action, purporting to assert claims on behalf of Plaintiff, a putative class of Illinois consumers, and a putative multi-state class of Kansas, Kentucky, Nebraska, North Carolina, South Dakota, Utah, West Virginia, and Wyoming consumers.

Plaintiff's primary claim arises under the ICFA. She also raises a single, general claim for violations of various unidentified state consumer fraud acts. Next, under a single count, Plaintiff brings claims for breaches of express warranty and implied warranty of merchantability/fitness for a particular purpose, as well as violation of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301 et seq. Plaintiff also brings separate Illinois common law claims for negligent misrepresentation, fraud, and unjust enrichment. Finally, Plaintiff seeks injunctive relief.

**ANALYSIS**

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In ruling on a motion to dismiss for failure to state a claim, the court views the complaint in the light most favorable to the plaintiff, assuming all well-pleaded facts to be true and drawing all reasonable inferences in the plaintiff's favor. *Roe v. Dettelbach*,

59 F.4th 255, 262 (7th Cir. 2023). The court need not, however, accept as true any legal assertions, threadbare recitals of the elements of a cause of action, or conclusory statements. See *Iqbal*, 556 U.S. at 678.

Plaintiff's ICFA Claim

Defendant contends in its Motion to Dismiss that Plaintiff has failed to plausibly allege a deceptive or unfair act or practice by Defendant. Defendant points out that Plaintiff does not actually dispute the veracity of the label claims in question, i.e., that the product kills 99.9% of bacteria on laundry or that the product "sanitize[s]" laundry. Defendant argues that Plaintiff's interpretation of those truthful claims to mean that the product would provide a meaningful benefit beyond "the standard laundering process" is unreasonable, idiosyncratic, and insufficient to state a claim under the ICFA. Alternatively, Defendant argues that Plaintiff's ICFA claim is preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136, et seq., which requires that the label of the product be approved by the Environmental Protection Agency ("EPA").

In response, Plaintiff maintains that even truthful statements can be misleading, and that she has alleged facts plausibly establishing deception. Plaintiff also argues that her claim is not preempted by the FIFRA.

To state a claim under the ICFA, a plaintiff must allege "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673

F.3d 547, 574 (7th Cir. 2012). Under the ICFA, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). Specifically, where an ICFA claim is based upon purportedly misleading labeling, "a plaintiff must plead that 'the relevant labels are likely to deceive reasonable consumers,' which 'requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *DeMaso v. Walmart Inc.*, —F.Supp.3d—, 2023 WL 1800208, at *3 (N.D. Ill. Feb. 7, 2023) (quoting *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474-75 (7th Cir. 2020)). "Although ICFA claims often involve disputed questions of fact not suitable to a motion to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a matter of law." *Ibarrola v. Kind, LLC*, 83 F.Supp.3d 751, 756 (N.D. Ill. 2015).

"Under limited circumstances, representations that are literally true have been found to be potentially misleading under ICFA." *Oettle v. Walmart, Inc.*, 2022 WL 3584944, at *4 (S.D. Ill. Aug. 22, 2022); see also *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("A label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false."). "[T]he few cases which have found a true statement to be actionable under ICFA typically involve a facially obvious omission or deception as to a material fact." *Oettle*, 2022 WL 3584944, at *5.

In the instant case, Plaintiff does not dispute the literal truth of the claim that the product kills 99.9% of bacteria on laundry. Nor does Plaintiff dispute that this amounts to a sanitization of the laundry. Instead, Plaintiff asserts that those claims are deceptive

insofar as they imply that that the product will make a meaningful difference in the transmission of infectious disease through laundry, because that risk is already "negligible"[2] for items undergoing the "standard laundering process."

Plaintiff has not identified a "facially obvious omission or deception." *Id*. On the contrary, she maintains that the claims on the product's label are misleading *only* when a specific set of assumptions and inferences are made. The product asserts on its label that it kills 99.9% of bacteria on laundry. From this, Plaintiff apparently assumed that the product must cause a meaningful reduction in the potential for transmission of infectious diseases as compared to laundry subjected to the standard laundering process.

Plaintiff's inferential leap is a large one. She feels misled by a claim the product does not actually make. See *Wienhoff v. Conagra Brands, Inc.*, 626 F.Supp.3d 1015, 1025 (S.D. Ill. 2022) (dismissing ICFA claim and stating: "Wienhoff reads 'Made With Real Milk' and 'Smoother' and jumps to the conclusion that the pudding must include whole milk—and thus must include milkfat."). That is, while the product claims to kill 99.9% of bacteria on laundry, it makes no claims or insinuations as to the amount of bacteria ordinarily killed in the standard laundering process. But Plaintiff's assumptions go even further. While the actual label claim refers simply to the elimination of bacteria

[2] The court notes that, per the Complaint, the CDC determined that the risk of disease transmission through the laundry "likely is negligible." Also per the Complaint, Carol McLay concurred in those findings. Plaintiff then states that "[t]he reasonable conclusion" is that the risk of infectious disease transmission through the laundry "is less than negligible." Plaintiff does not explain how she got from "likely … negligible" to "less than negligible."

generally, Plaintiff makes no comparison between the product's efficacy in *that* regard and her "standard laundering process." Instead, without explanation, the Complaint focuses singularly on the transmission of infectious disease—a subject not even referenced on the label. The Complaint makes no mention of other potential reasons a consumer might be interested in bacteria elimination, such as the removal of odors or a general interest in having clothes and other linens free from bacteria.

In short, Plaintiff was misled not by the label, but by her own assumptions about the product. That the product kills 99.9% of bacteria does not directly state, nor does it invite the inference, that the product meaningfully reduces the risk of the transmission of infectious diseases through laundry. The court finds that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances," would not be misled in the same fashion as Plaintiff. See *DeMaso*, 2023 WL 1800208, at *3.

In reaching this conclusion, the court finds especially instructive two cases, one relied upon by Defendant, and one relied upon by Plaintiff. In *Bober*, the case relied upon by Defendant, the plaintiff's claims related to Zantac 75, an over-the-counter medication containing 75 milligrams of ranitidine, and Zantac 150, a prescription-only medication containing 150 milligrams of ranitidine. *Bober*, 246 F.3d at 937. Two Zantac 75 tablets were therapeutically equivalent to one Zantac 150 tablet, though the latter was more expensive. *Id*. Plaintiff alleged that he was misled on three occasions: (1) when an operator on the Zantac consumer hotline told him "that Zantac 75 and Zantac 150 were not the same medications, and that [he] could not substitute two Zantac 75

tablets for one Zantac 150 tablet"; (2) when a recorded message on the same hotline stated, "If your doctor has directed you to take prescription Zantac, you should not substitute Zantac 75 for your prescription"; and (3) when the FAQ page on the Zantac website stated, "If your physician has prescribed a medicine, you should not substitute any other medicine for your prescription. You should always ask your physician any questions you may have about changing your medication." *Id*.

The Seventh Circuit affirmed the Rule 12(b)(6) dismissal of the ICFA action, reasoning that "none of the statements . . . expressly" made a claim that the medicine in the separate products was different. The court added: "The statements do claim that the two drugs are different medications, but that claim is completely true." *Id*. at 938; see also *id*. at 939 ("Put simply, none of the three statements at issue can reasonably be read as falsely claiming or implying that Zantac 75 and Zantac 150 do not contain the same medicine."). The statements discouraging substitution, the court reasoned, could only be interpreted as discouraging substitution without consulting with a doctor first. *Id*. at 940. Thus, the court concluded that the three statements identified by the plaintiff were not misleading under the ICFA as a matter of law. *Id*.

The statements at issue in *Bober* seem far more likely to mislead than those at issue here. Indeed, *Bober* stands as an example of the difficulties facing a plaintiff alleging that a true statement is nevertheless misleading. See *Oettle*, 2022 WL 3584944, at *4-5. That one pill contained twice as much ranitidine as the other was sufficient in the *Bober* court's opinion to call the two products "different medications." The plaintiff's argument in that case was essentially that there was no *meaningful* difference between

the medications—to borrow a term from Plaintiff here—aside from their size. But that reasoning was not compelling to the Seventh Circuit.

In *Bober*, at least, the defendant had actually made statements about the substitutability of the two medications, and perhaps reasonable minds could differ as to their interpretation. Here, however, Defendant has undisputedly made *no* statements about the product's comparative ability to decrease the risk of infectious disease transmission through laundry. That conclusion is purely a product of Plaintiff's idiosyncratic thought process.

Meanwhile, Plaintiff relies upon *In re Dial Complete Mktg. & Sales Pracs. Litig.*, 2013 WL 1222310 (D.N.H. Mar. 26, 2013). In that case, the plaintiffs took exception to Dial's marketing of its Dial Complete product, a soap containing triclosan that Dial advertised with such claims as, "kills 99.99% of germs," "kills more germs than any other liquid hand soap," and "shown to help reduce disease transmission by 50% compared to washing with a plain soap." *Id.* at *1. According to the plaintiffs' complaint, Dial Complete actually had no greater efficacy than soaps that do not contain triclosan, and there was no clinical support for the claims in question. *Id.* at *2.

The district court denied Dial's motion to dismiss, stating:

> Dial responds by pointing out the unique—indeed patented—formula of its Dial Complete products, suggesting that Dial Complete is more effective at killing bacteria than the triclosan-based products that were the subject of the studies cited by plaintiffs. That may, of course, be true. But, at this early stage of the litigation, plaintiffs need not disprove that claim. They need only plead sufficient facts to support their assertion that Dial knowingly misrepresented the antibacterial efficacy of its Dial Complete product line. They have done so.

*Id*. Invoking this passage from the district court's opinion, Plaintiff asserts that "Though it may be true that Defendant's laundry sanitizer 'is more effective at killing bacteria than the [standard laundering process] … at this early stage of the litigation, [P]laintiff[] need not disprove that claim.'"

The *Dial* case is notable for both its similarities to and differences from the instant case. Similar to Defendant, Dial claimed that its product killed 99.99% of germs. But Dial also explicitly stated that this represented a significant reduction in disease transmission over washing with plain soap—the standard handwashing process. In other words, Dial actually made the claims that Plaintiff imagines Defendant to have made here.

Moreover, in invoking the passage from the *Dial* court, Plaintiff curiously asserts that at this stage it need not disprove "that Defendant's laundry sanitizer is more effective at killing bacteria than the standard laundering process." (cleaned up). This assertion stands out because Plaintiff, again, has not even *alleged* that the product is not more effective at killing bacteria. Instead she alleges that the product is not more effective (compared to the standard laundering process) at reducing the risk of infectious disease transmission—a far more specific claim that is even further divorced from the actual statement on the product's label. Plaintiff draws no connection between that risk level and the percentage of bacteria killed. For instance, is the killing of 70% of bacteria sufficient to render the risk of transmission negligible? 80%? The Complaint does not even purport to estimate. Even if Plaintiff infers that "kills 99.9% of bacteria"

must mean that the product kills meaningfully more bacteria than the standard laundering process, she has not alleged that the product does not do that.

Accordingly, the court finds that the statements in question do not create a likelihood of deception and do not have the capacity to deceive. See *Bober*, 246 F.3d at 938. They are not misleading as a matter of law.[3] See *Ibarrola*, 83 F.Supp.3d at 756. Defendant's Motion to Dismiss is GRANTED as to Plaintiff's ICFA claim.

Warranty Claims

Plaintiff next brings claims for breach of express warranty, breach of the implied warranty of merchantability/fitness for a particular purpose, and violation of the Magnuson Moss Warranty Act. Each of these claims, however, fail for the same reason as Plaintiff's ICFA claim.

Breach of express or implied warranty claims in Illinois, like ICFA claims, require a plaintiff to show that the label statements in question were likely to mislead a reasonable consumer. See *Reinitz v. Kellogg Sales Co.*, 2022 WL 1813891, at *5 (C.D. Ill. June 2, 2022). Accordingly, courts regularly dismiss warranty claims based on the same theory of deception as dismissed ICFA claims. *E.g.*, *id.*; *DeMaso*, 2023 WL 1800208, at *5 ("The Court's finding that a reasonable consumer would not be misled for purposes of

[3] The court therefore has no need to address the parties' preemption argument. However, the court will note that federal preemption is an affirmative defense. *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 309 (7th Cir. 2010). Dismissal on the basis of an affirmative defense is only appropriate when the "plaintiff pleads himself out of court by alleging facts sufficient to establish" the defense. *Sidney Hillman Health Ctr. v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (cleaned up). Otherwise, the question is more suitable for summary judgment.

the ICFA claim applies as well to the warranty claims."); *Brodsky v. Aldi Inc.*, 2021 WL 4439304, at *5 (N.D. Ill. Sept. 28, 2021) ("Plaintiffs' express and implied warranty claims suffer from the same fatal flaw as their consumer protection claims: a reasonable consumer would not understand defendants' label to warrant that the products make 210 six-ounce cups of coffee."); *Wach v. Prairie Farms Dairy, Inc.*, 2022 WL 1591715, at *5–6 (N.D. Ill. May 19, 2022) ("Like their ICFA claim, each of these claims is premised on the assertion that the Product's labeling is false, deceptive, and misleading. . . . [M]y conclusion that the Product's labeling is not false, misleading, or deceptive as a matter of law is fatal to these claims as well.").

The same result is called for here. Because Plaintiff has failed to plausibly allege that the product's label is misleading or deceptive, her breach of warranty claims also fail as a matter of law. Further, because "a cause of action under the Magnuson-Moss Act is dependent on the existence of an underlying viable state-law warranty claim," *Schiesser v. Ford Motor Co.*, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016), that statutory claim fails as well.

The court would also note that Illinois law expressly requires that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 810 Ill. Comp. Stat. 5/2-607(3)(a). While Plaintiff asserts that her filing of the instant lawsuit *was* the notice, this theory has been explicitly rejected by the Illinois Supreme Court. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590 (Ill. 1996) ("Only a consumer plaintiff who suffers a personal injury may satisfy the section 2–607 notice requirement by filing a complaint

stating a breach of warranty action against the seller.")[4]; see also *Wienhoff,* 626 F.Supp.3d at 1027 ("Wienhoff claims only economic loss—so filing a complaint does not satisfy the notice requirement."). It has also been implicitly rejected by every court that has ever dismissed an Illinois breach of warranty claim for lack of notice. Because Plaintiff has suffered no personal injury, her breach of warranty claims (and by extension, her Magnuson Moss claim) are dismissible on this basis as well.

Accordingly, Defendant's Motion to Dismiss is GRANTED as to Plaintiff's claims for breach of express and implied warranty and violation of the Magnuson Moss Warranty Act.

Remaining Common Law Claims

Plaintiff's claims for fraud and negligent misrepresentation fail for the same reasons as her ICFA and warranty claims. See *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833, 841 (7th Cir. 2007) (claims for fraud and negligent misrepresentation each require as an element "a false statement of material fact."). Plaintiff has failed to plausibly allege that the product's label was misleading, let alone false. Meanwhile, a plaintiff "cannot proceed with a claim for unjust enrichment where she has failed to successfully plead an action for fraud." *Reinitz*, 2022 WL 1813891, at *6 (citing *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim,

[4] "The reason for this distinction is that where the breach has not resulted in personal injury, the UCC indicates a preference that the breach be cured without a lawsuit." *Connick*, 675 N.E.2d at 590–91.

then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.”)).

Defendant’s Motion to Dismiss is therefore GRANTED as to Plaintiff’s claims for fraud, negligent misrepresentation, and unjust enrichment.

Other State Consumer Fraud Acts[5]

Defendant asserts that Plaintiff, as an Illinois resident who purchased the product in Illinois, lacks standing to bring claims under the consumer fraud laws of other states. However, “[t]his challenge is more accurately characterized as an attack not on [Plaintiff’s] Article III standing *per se* . . . but rather on [her] ability under Rule 23 to represent the multi-state class.” *Halperin v. Int’l Web Servs., LLC*, 123 F.Supp.3d 999, 1009 (N.D. Ill. 2015) (citing Fed. R. Civ. P. 23).

Still, Plaintiff’s failure to adequately plead an ICFA violation renders her unable to represent either an Illinois class under the ICFA or a multi-state class under the laws of various other states. *Id.* (collecting cases); see also *Chavez v. Illinois State Police*, 251 F.3d 612, 630 (7th Cir. 2001) (“[I]f the court determines that the named plaintiffs’ claims lack merit, such a decision ordinarily, though not invariably, disqualifies the named plaintiffs as proper class representatives,’ thus resolving the issue of class certification.” (cleaned up)). Accordingly, Plaintiff’s claims under other unidentified consumer fraud acts are DISMISSED.

[5] Plaintiff never identifies any specific statutes from other states under which she seeks relief. The court presumes they are the consumer fraud statutes of the states listed in Plaintiff’s putative multi-state class.

Finally, because the court has dismissed all of Plaintiff's substantive claims, it need not consider whether Plaintiff has standing to pursue injunctive relief. See *Wach*, 2022 WL 1591715, at *6 n.6.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Dismiss (#7) is GRANTED in full.

(2) Plaintiff is granted 21 days from the date of this Order to file an amended complaint, if she so chooses. If no amended pleading is filed, this matter will be terminated.

ENTERED this 15th day of September , 2023.

s/Colin Stirling Bruce
COLIN S. BRUCE
U.S. DISTRICT JUDGE